## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JAMEELA PARKER,

       *Plaintiff*,

    **v.**                                    **Civil No.: 1:21-cv-02906-JRR**

HOMESITE INSURANCE COMPANY,

       *Defendant*.

## MEMORANDUM OPINION

Pending before the court is Defendant Homesite Insurance Company's Motion for Summary Judgment at ECF No. 21 (the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be denied.

## I.    BACKGROUND

This breach of contract action arises from an insurance policy (ECF No. 22; the "Policy") underwritten by Defendant that Plaintiff Jameela Parker maintained for her property located at 723 N. Luzerne Avenue in Baltimore, Maryland (the "Luzerne Property"). (ECF No. 2; the "Complaint.") Plaintiff asserts Defendant breached the Policy by failing to provide coverage of Plaintiff's property losses following alleged vandalism. *Id.* ¶¶ 9–19.

After Defendant filed the instant Motion, it withdrew the Motion based on its understanding from Plaintiff's then-counsel that the matter had settled. (ECF Nos. 23, 28.) Thereafter, Plaintiff's counsel moved to withdraw his appearances, which the court granted, and Defendant moved to enforce the settlement agreement. (ECF Nos. 31, 32, 35.) Following oral argument, the court denied the motion to enforce and reinstated Defendant's Motion, setting forth

a schedule for response and reply deadlines. (ECF No. 51.) Plaintiff, now *pro se*, filed her

response, and Defendant replied.[1] (ECF Nos. 55, 58.)

## II.    <u>UNDISPUTED FACTS</u>

### A.  The Policy

From at least September 15, 2019, through September 15, 2020, Plaintiff maintained the

Policy with Defendant for the Luzerne Property. (Policy, ECF No. 22-3.) Pursuant to the Policy,

Defendant provided insurance coverage for the "insured location," meaning:

> a. The "residence premises";
> b. The part of other premises, other structures and grounds used by
> you as a residence; and
> > (1) Which is shown in the Declarations; or
> > (2) Which is acquired by you during the policy period for
> > your use as a residence;
> c. Any premises used by you in connection with a premises
> described in a. and b. above;
> d. Any part of a premises:
> > (1) Not owned by an "insured"; and
> > (2) Where an "insured" is temporarily residing;
> e. Vacant land, other than farm land, owned by or rented to an
> "insured";
> f. Land owned by or rented to an "insured" on which a one-, two-,
> three- or four-family dwelling is being built as a residence for an
> "insured";
> g. Individual or family cemetery plots or burial vaults of an
> "insured"; or
> h. Any part of a premises occasionally rented to an "insured" for
> other than "business" use.

*Id.* at p. 2.

"Residence premises," as defined by the Policy, refers to:

> a. The one-family dwelling where you reside;
> b. The two-, three- or four-family dwelling where you reside in at
> least one of the family units; or

---

[1] The court acknowledges the delay that has ensued since the Motion became ripe. As a result of a clerical error related to the prior withdrawal and reinstatement of the Motion, the Motion was erroneously coded as inactive in the court's records.

> c. That part of any other building where you reside; and which is shown as the "residence premises" in the Declarations.
>
> "Residence premises" also includes other structures and grounds at that location.

*Id.* at p. 2–3.

The Policy does not cover loss to the dwelling, or other structures, that result from, *inter alia*:

> (3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;
> (4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant[.]

*Id.* at 9.

Plaintiff cancelled the Policy effective September 15, 2020. (January 2021 Recorded Claims Statement, ECF No. 22-7 at p. 11.)

### B. Damage to the Luzerne Property[2]

Plaintiff purchased the Luzerne Property in 2017. (Parker Dep., ECF No. 22-11 at 18:11–17; January 2021 Recorded Claims Statement, ECF No. 22-7 at p. 2–3.) Plaintiff contends that on

---

[2] In support of its Motion, Defendant attaches an expert report from Donan Engineering Co., Inc., prepared by Layne O. Blavier, Forensic Engineer, on May 7, 2021. (Donan Engineering Report, ECF No. 22-8.) While the report is signed by Blavier, it is unsworn, and Defendant did not submit a declaration or affidavit "made 'under penalty of perjury' from the expert[] attesting that [he] 'would testify to the matters set forth in [his] . . . report[].'" *See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 539 (4th Cir. 2015). As this court has explained:

> "[I]t is well-established at both the circuit level and in this District that unsworn expert reports are inadmissible on summary judgment." *Doe v. Bd. of Educ. of Prince George's Cnty.*, 982 F. Supp. 2d 641, 660 n.5 (D. Md. 2013) (collecting cases refusing to consider such reports).
>
> An exception to this rule exists when "the party submitting the evidence show[s] that it will be possible to put the information . . . into an admissible form." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532,

or about September 14, 2020, the Luzerne Property was vandalized, and that she discovered the damage that same day. (ECF No. 2 ¶ 4; ECF No. 21-1 at p. 1; September 2020 Recorded Claims Statement, ECF No. 22-4 at p. 1.) Also on that same day, Plaintiff contacted Defendant to file a claim related to the damage. (September 2020 Recorded Claims Statement, ECF No. 22-4 at p. 1.) When asked about the state of the home, she noted a prior plumbing issue that damaged some of the "furniture and stuff," so she had "no personal stuff" in the house at the time. *Id.* at p. 2. During subsequent contact with Defendant, Plaintiff stated that she had been away from the home since at least August 15, 2020, and as of that time, "the house was in excellent condition. It was clean; all of [her] belongings were there;" and the house was "fully furnished." (January 2021 Recorded Claims Statement, ECF No. 22-7 at p. 4.)

Defendant's field adjuster inspected the Luzerne Property on September 22, 2020. (ECF No. 21-1 at p. 6; ECF No. 55 at p. 1–2.) The adjuster took photos of the Luzerne Property that

---

538 (4th Cir. 2015 (internal quotation marks and citation omitted)). A party can cure the evidentiary issues posed by an unsworn report through "subsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition." *Id.* at 539. Here, however, [the defendant] has not submitted an affidavit by [the expert], and has instead provided excerpts from [the expert's] deposition to support the consideration of his unsworn primary expert report. *Id.* However, none of these excerpts reaffirms or even speaks to the points in [the expert's] primary expert report that [the defendant] relies on in its motion for summary judgment.

Thus, the Court has no way to assure itself that it "will be possible to put [the expert's report] into an admissible form," and thereby cannot consider his primary expert report for the purpose of deciding these cross-motions for summary judgment. *Humphreys*, 790 F.3d at 538.

*AMBIMJB, LLC v. Strategic Armory Corps, LLC*, No. CV JKB-20-807, 2021 WL 949376, at *7–8 (D. Md. Mar. 12, 2021). "[C]ourts in this District continue to decline to consider unsworn expert reports at the summary judgment stage." *Savage v. Fed. Home Loan Mortg. Corp.*, No. CV JKB-19-2482, 2021 WL 5330345, at *7 (D. Md. Nov. 16, 2021). While Fourth Circuit caselaw has suggested that a plaintiff's Rule 56(c)(2) challenge triggers the required showing, *see Aleman v. City of Charlotte*, 80 F.4th 264, 277 n.5 (4th Cir. 2023), *cert. denied,* 144 S. Ct. 1032 (2024), the court is not persuaded to consider the expert report here where Defendant bears the burden of establishing that no genuine dispute of material fact exists and it has offered no argument, let alone affidavit or deposition testimony, in support of the report's admissibility. *See Humphreys & Partners Architects*, 790 F.3d at 539, *supra.* Notably, even if the court were to consider the expert report, it would not materially alter the court's analysis or adjudication of the Motion.

depict, *inter alia*, furniture and construction debris in the backyard, removed flooring, damage to the plumbing and toilet, removed walls, and no furnishings. (Luzerne Property Photos, ECF No. 22-5.) On December 1, 2020, after concluding its investigation, Defendant informed Plaintiff that it would not provide coverage for the vandalism because the Luzerne Property was vacant and unoccupied, and because Plaintiff did not cooperate with its attempts to investigate. (December 1, 2020 Denial Letter, ECF No. 22-6.) Defendant noted that it had asked Plaintiff to provide a statement under oath as part of its investigation, which request she refused. *Id.* In her opposition, Plaintiff admits that she refused to allow Defendant's "private investigator" into her home. (ECF No. 55 at p. 2.)

The claim was then reopened for additional investigation, which resulted in the recorded claims statement of January 20, 2021. (January 2021 Recorded Claims Statement, ECF No. 22-7.) By letter of March 11, 2021, Defendant informed Plaintiff, via her counsel, that it had completed its investigation into her claim of vandalism and, again, determined that the Luzerne Property did not meet the definition of a residence premises under the Policy, and that the home was vacant and unoccupied.[3] (March 2021 Denial Letter, ECF No. 22-9.)

### C. Plaintiff's Residency

Plaintiff testified at deposition that she moved into the Luzerne Property in 2017 and resided there, on her own, until September 15, 2020.[4] (Parker Dep., ECF No. 22-11 at 22:15–23:4.) Similarly, she attested that she did not reside in any other place from the time she moved into the Luzerne Property in 2017 through September 15, 2020. *Id.* at 23:5–8. Plaintiff maintains

---

[3] On October 19, 2020, Plaintiff submitted a complaint with the Maryland Insurance Administration ("MIA") "to have [her] claim approved." (MIA Complaint, ECF No. 22.) The MIA determined that Defendant "did not violate Maryland insurance law in its denial of [her] claim." (MIA Determination Letter, ECF No. 22-10 at p. 1.)

[4] It is undisputed that Plaintiff was physically away from the Luzerne Property from approximately August 15 through September 14, 2020. (January 2021 Recorded Claims Statement, ECF No. 22-7 at p. 7; MIA Complaint, ECF No. 22; ECF No. 55 at p. 1.)

P.O. boxes in Bear, Delaware and Columbia, Maryland, *see id.* at 24:11–21, and a Delaware driver's license. (Parker Dep., ECF No. 22-11 at 14:13–9; Parker Driver's License, ECF No. 58-3.) Plaintiff testified that she did not ever live, nor did she know anyone who lived, in an apartment at 5345 Harpers Farm Road in Columbia, Maryland, or an apartment at 9741 Clock Tower Lane in Columbia, Maryland. (Parker Dep., ECF No. 22-11 23:9–20; 24:3–10.) Plaintiff's opposition, though unsworn, contradicts her deposition testimony, and states that she leased the apartments at the request of an abusive partner. (ECF No. 55 at p. 2.)

The undisputed evidence offered by Defendant is that Plaintiff maintained a lease for an apartment at 9741 Clocktower Lane in Columbia, Maryland from May 10, 2019, through May 9, 2020 (Huntington Square Lease, ECF No. 22-12), and a lease for an apartment at 5345 Harpers Farm Road in Columbia, Maryland from May 8, 2020, through May 31, 2021 (Columbia Choice Apts. Lease, ECF No. 22-13). Insurance policies for both apartments existed in Plaintiff's name (as the insured). (Huntington Square State Farm Decl., ECF No. 58-1; Columbia Choice Apts. State Farm Decl., ECF No. 58-5.) Defendant also submits documents showing Plaintiff's connection to these addresses, including, *inter alia*: (1) a release of information dated July 8, 2019, related to a national security position in which Plaintiff identified her then current address as Apartment 304 at 9741 Clocktower Lane in Columbia, Maryland (Release of Information, ECF No. 58-4); (2) a lease application of May 5, 2020, for Columbia Choice Apartments (the Harpers Farm Road property) in which Plaintiff identified her "current residence" as Apartment 304 at 9741 Clocktower Lane in Columbia, Maryland (Lease Application, Columbia Choice Apts., ECF No. 58-8); (3) a lease application of May 10, 2022, in which Plaintiff identified her "current address" as Apartment 6 at 5345 Harpers Farm Road in Columbia, Maryland, (Lease Application, Oakview Apartments, ECF No. 58-10); and (4) an earnings and leave statement for the pay period

March 29 through April 11, 2020, that lists Plaintiff's address as Apartment 304 at 9741 Clocktower Lane in Columbia, Maryland, (Statement of Earnings and Leave, ECF No. 58-6). Plaintiff, however, submits to the court tax returns for 2018, 2019, and 2020 which identify her home as Bear, Delaware.  (2018, 2019, and 2020 Tax Returns, ECF No. 55-8.)

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## IV.   <u>ANALYSIS</u>

"Maryland law is well settled that 'the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts.'"[5] *Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, 611 F. Supp. 3d 41, 50–51 (D. Md. 2020) (quoting *Mitchell v. AARP*, 140 Md. App. 102, 116 (2001)); *see Matter of Featherfall Restoration LLC*, 261 Md. App. 105, 129–30, *cert. granted,* 487 Md. 264 (2024) ("Generally, Maryland courts 'interpret the language of an insurance policy with the same principles and rules of construction that we use to interpret other contracts.'" (quoting *Connors v. Gov't Employees Ins. Co.*, 442 Md. 466, 480 (2015)).

"Under Maryland law, the elements of a claim for breach of contract are contractual obligation, breach, and damages." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 596 (D. Md. 2018). "To 'prevail on an action for breach of contract, a plaintiff must prove that the defendant

---

[5] "A federal court sitting in diversity is required to apply the substantive law of the forum state . . . ." *Francis v. Allstate Ins.*, 709 F.3d 362, 369 (4th Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)).

owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" *Id.* (quoting *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)). "In other words, '[i]t is the parties' agreement that ultimately determines whether there has been a breach.'" *Id.* (quoting *Mathis v. Hargrove*, 166 Md. App. 286, 318–19 (2005)).

Here, there is no dispute regarding the existence or interpretation of the Policy. (ECF No. 21-1 at p. 1–5; ECF No. 55 at p. 1.) Instead, the dispute centers on conflicting factual accounts of whether Plaintiff resided at the Luzerne Property and whether the Luzerne Property was vacant as set forth in the Policy. As explained *supra*, the Policy provides coverage for the insured location which refers to, relevant here, the "residence premises" where the insured resides. (Policy, ECF No. 22-3 at p. 5.) The Policy does not provide coverage for "vandalism and malicious mischief . . . if the dwelling has been vacant for more than 60 consecutive days immediately before the loss." *Id.* at p. 12. It is undisputed that the Policy's coverage for the damages resulting from the purported vandalism does not extend to the Luzerne Property if it was not a "residence premises" under the Policy or if it had been vacant for more than 60 consecutive days prior to September 14, 2020. *Id.*

As explained above, Defendant offers various forms of evidence that Plaintiff did not reside at the Luzerne Property—and, therefore, it was not a "residence premises" under the Policy—and that the Luzerne Property was vacant for 60 consecutive days prior to the alleged vandalism. As said earlier, evidence submitted by the defense includes (among other things) lease agreements and insurance policies for apartments in other locations during the relevant time period, and earnings statements and applications identifying addresses in Columbia, Maryland. In opposition, Plaintiff offers little evidence to support her claim that she resided at the Luzerne Property during the relevant time period. She simply asserts (without attestation) that she did reside at the Luzerne

Property prior to September 14, 2020. (ECF No. 55 at p. 3.) Notably, however, Plaintiff testified

at deposition that she spent the majority of her time at the Luzerne Property up until August 2020,

including that she slept there approximately seven days a week. (Parker Dep., ECF No. 22-11 at

45:6–14.) She further stated in both recorded claims statements that she lived at the Luzerne

Property. (September 2020 Recorded Claims Statement, ECF No. 22-4 at p. 2; January 2021

Recorded Claims Statement, ECF No. 22-7 at p. 3.)

The competing assertions of the parties present a genuine dispute of material fact as to

whether Plaintiff resided at the Luzerne Property during the relevant period. The court observes

that Plaintiff's account is supported solely by self-serving testimony. While a "party cannot create

a genuine dispute of material fact through mere speculation or compilation of inferences," *Shin,*

166 F. Supp. 2d at 375, *supra*, "[t]estimony that is based on personal knowledge or firsthand

experience can constitute evidence of disputed material facts, even if it is uncorroborated and self-

serving." *Evans v. Schultz*, No. CV ELH-22-3073, 2024 WL 3568569, at *6 (D. Md. July 29,

2024); *see Harrell v. DeLuca*, 97 F.4th 180, 187 (4th Cir. 2024) (explaining that the nonmovants'

"self-serving declarations" could defeat summary judgment).

The court recognizes that Defendant's evidentiary submissions raise colorable doubt as to

Plaintiff's credibility, but on a Rule 56 motion, it is not this court's "function . . . to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 264 (D. Md. 2023) (quoting

*Anderson*, 477 U.S. at 249). In this vein, the court may not make credibility determinations on

summary judgment. "Where there is conflicting evidence, . . . summary judgment ordinarily is

not appropriate because it is the function of the fact-finder to resolve factual disputes, including

matters of witness credibility." *Id.*

Drawing all reasonable inference's in Plaintiff's favor, and construing her *pro se* filings liberally "so as to do substantial justice," *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (citations omitted), the above-described genuine dispute of a material fact precludes entry of summary judgment.  The court will therefore deny the Motion.[6]

## V.    **CONCLUSION**

For the reasons set forth herein, by separate order, the Motion will be denied.

January 21, 2025                                          /s/_____
                                                         Julie R. Rubin
                                                         United States District Judge

---

[6] For the first time in reply, Defendant refers to the Policy's provision on concealment or fraud, which denies coverage where an insured has intentionally concealed or misrepresented any material fact or circumstances, engaged in fraudulent conduct, or made false statements related to the insurance coverage.  (ECF No. 58 at p. 9; Policy, ECF No. 22-3 at p. 17.)  According to Defendant, Plaintiff's "misrepresentations under oath and failure to cooperate during the investigation are additional basis for [Defendant] to deny her coverage."  (ECF No. 58 at p. 14–15.)  While the court appreciates that Plaintiff's opposition contradicts her deposition testimony, the court declines to consider this argument raised for the first time in reply.  *See De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("Generally, 'new arguments cannot be raised in a reply brief' before the district court. . . . A contrary rule runs the risk of depriving a nonmovant an opportunity to respond."  (quoting *United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013)).  Defendant also asserts for the first time in reply that Plaintiff's claims should be dismissed because she "has failed to present any expert testimony or evidence regarding her alleged damages."  (ECF No. 58 at p. 1.)  The court declines to consider this argument both for the reasons stated above and because Defendant does not present argument and authority in support of its proposition.  (*Sua sponte*, the court considered and rejected application of the sham affidavit doctrine; *see Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (explaining that "[t]he lower courts . . . have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.")).